COURT OF APPEALS OF VIRGINIA

Present:  Judges Elder, Fitzpatrick and Annunziata
Argued at Richmond, Virginia


JOHN R. MAXEY
                                    MEMORANDUM OPINION[*] BY
v.     Record No. 2692-96-2    JUDGE ROSEMARIE ANNUNZIATA
                                      SEPTEMBER 23, 1997
WILLAVENE H. MAXEY

           FROM THE CIRCUIT COURT OF HANOVER COUNTY
                  Richard H. C. Taylor, Judge


           (Theresa Rhinehart, on brief), for appellant.
            Appellant submitting on brief.

           Robert G. Cabell, Jr. (Robert Cabell &
           Associates, on brief), for appellee.


     John R. Maxey (husband) appeals the equitable distribution

order of the trial court which confirmed the commissioner in

chancery's finding that Willavene H. Maxey (wife) was entitled to

certain percentage interests in two parcels of real property.

Finding no error, we affirm.

     The parties were married in June 1982, each for the second

time.  After numerous separations, wife filed for divorce in

September 1990.  In August 1991, the trial court referred the

matter to a commissioner in chancery, directing the commissioner

to report on a classification and distribution of the parties'

property.  Hearings before the commissioner were held in November

1991, and the commissioner's report was filed February 29, 1996.

_____

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

The final decree of divorce, entered in October 1996, confirmed the commissioner's report on the issue of equitable distribution.

This appeal involves the distribution of two parcels of real estate, the Hanover property and the Buckingham property. When the parties were married in 1982, husband owned, outright, the home in which they lived. The record contains no evidence to establish the value of the home at the time of the marriage. The evidence established that both parties worked until husband became totally disabled in 1983 or 1984; wife continued to work thereafter. Sometime after the marriage, husband put a new kitchen in the home. The record contains no evidence to establish the value of the new kitchen. Wife's testimony showed that she contributed monetarily to the purchase of paint, floor tile, and wooden ceiling beams used to improve the home. The record contains no evidence to establish the value of these improvements.

In 1983, husband purchased approximately fifteen acres of land, upon which a new home for the parties was built (the Hanover property). Husband used his "disability money" to make a down payment of $20,000 on the land; he signed a deed of trust for the remaining $25,000. The first home was sold and cleared approximately $130,000. Husband testified that he used the $130,000 to pay for construction of the new home. The record contains no evidence to establish the total cost of construction.

In 1987, husband purchased approximately 102 acres of land

2

(the Buckingham property), for a purchase price of $55,000.
Husband received credit on the purchase price in the amount of
$15,000 for a camper, an antique car and certain livestock that
he transferred to the seller. The camper was purchased during
the marriage and was titled in the names of both parties. The
record contains no evidence to establish the value of the camper.
Husband testified that wife did not contribute to the purchase
of the camper or payments made on it, but the record contains no
evidence to establish which assets husband used for the purchase
of the camper. The record contains no evidence to establish the
value or source of either the antique car or the livestock
transferred to the seller of the Buckingham property.

The commissioner's hearing was held in November 1991. By
the fall of 1995, the commissioner's report had not been filed,
and the parties requested the commissioner to make a limited
finding with respect to a percentage of ownership of the parcels.
In consideration of the standards set forth in Code § 20-107.3,
the commissioner found that wife's share of the Hanover property
should be 35% and that her share of the Buckingham property
should be 20%. Upon wife's motion to approve the commissioner's
report, the trial court concluded that the record contained
sufficient evidence to support the commissioner's findings.

I.

On appeal, husband alleges error in the classification of
the two parcels of real estate. He concedes that the assets used

3

to purchase the parcels were "transmuted" and, thus, that both parcels became marital property.  See Code § 20-107.3(A)(3)(e).  He contends, however, that his contributions were "retraceable" and should have been classified as his separate property.  Id.

Husband's appellate contention on the issue of classification is belied, and procedurally barred, by the position he took in requesting the commissioner in chancery to recommend a percentage distribution of both parcels in their entirety.  The request for a percentage distribution of the entire value of the parcels was, by its very nature, an abandonment of a request that the commissioner determine certain portions of the parcels to be separate property and thus, by definition, not subject to distribution.  The parties themselves, in other words, considered the entirety of the parcels to be marital property subject to distribution; classification was not an issue.  Thus, even assuming the classification was in error, husband acquiesced in it.  "`He cannot approbate and reprobate--invite error and then take advantage of his own wrong.'"  Steinberg v. Steinberg, 21 Va. App. 42, 50, 461 S.E.2d 421, 424 (1995) (quoting Sullivan v. Commonwealth, 157 Va. 867, 878, 161 S.E. 297, 300 (1931)).

In the alternative, even assuming husband had established that his contributions could be traced, he failed to prove the extent to which, if any, those contributions were separate property.  See Brett R. Turner, Equitable Distribution of

4

Property § 5.23 (2d ed. 1994) (explaining that tracing requires the owner to prove a series of exchanges extending back to an original separate asset).  Here, the evidence does not establish the value of the first home at the time of the marriage. Subsequent to the marriage, the home was improved by the addition of a new kitchen, a paint job, tile work and the addition of wooden ceiling beams.  The evidence does not establish the value of any of the improvements or the extent to which marital assets were used for their acquisition.  Thus, we cannot determine the extent to which the first home was separate property. Furthermore, the evidence does not establish the nature or source of husband's "disability money."  Accordingly, we cannot determine the extent to which, if any, the "disability money" was separate property.  See Brinkley v. Brinkley, 5 Va. App. 132, 140-41, 361 S.E.2d 139, 143 (1987); Turner, supra at § 6.16.

Finally, the evidence does not establish the extent to which, if any, the contributions of personal property toward the purchase of the Buckingham property were themselves separate property.  The camper was purchased during the marriage and was titled in both parties' names, and the evidence did not establish a source of funds for the purchase.  Even assuming husband paid the entire amount, the evidence fails to establish whether or not the funds he used were separate property.  In any event, the evidence does not show what amount of the $15,000 credit the camper represented, if any, and the evidence fails to establish

5

the value or source of the antique car or livestock also
contributed.

II.

The standard of review of the trial court's equitable distribution is well established.

> [U]nless it appears from the record that the trial judge has abused his discretion, that he has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying his resolution of the conflict in the equities, the equitable distribution award will not be reversed on appeal.

Blank v. Blank, 10 Va. App. 1, 9, 389 S.E.2d 723, 729 (1990). We review the evidence and all reasonable inferences in the light most favorable to the prevailing party below, wife in this instance. See Alphin v. Alphin, 15 Va. App. 395, 399, 424 S.E.2d 572, 574 (1992). We find no abuse of discretion in the trial court's decision to confirm the equitable distribution recommendation of the commissioner in chancery in the present case.

The percentage distribution figures at issue here represent a balancing of all the factors of Code § 20-107.3(E), not simply the monetary contributions to the acquisition of the property as husband would suggest. Under the statute, consideration must also be given to the parties' non-monetary contributions both to the well-being of the family and to the acquisition, care and maintenance of the marital property. Here, neither party suggests that their marriage was anything but "stormy." Nonetheless, the record contains evidence to show that wife

7

contributed to the well-being of the family both monetarily, by putting her work money to household use, and non-monetarily, by cooking, shopping, cleaning, gardening and the like. Furthermore, while there is no dispute that wife made little or no contribution to the acquisition of the marital property, the record contains evidence to establish that wife contributed to the care and maintenance of the marital property. Moreover, although riddled with problems, including numerous periods of separation, fourteen years separated the date of marriage from the date of divorce. The evidence also showed that, when the decree was entered, both parties were in their late sixties and both were disabled to some extent. And, while neither party disputes that the marriage was "doomed from the start," both accept equal responsibility for the circumstances and factors which contributed to the dissolution of the marriage. In addition, the record establishes that both parcels of real estate were acquired during the course of the marriage and both are non-liquid assets. Finally, contrary to husband's contention that he would bear the entire burden of outstanding debt and tax liability on the parcels, the percentage distribution, by definition, ensures that wife will bear a proportion of those liabilities.

Both the commissioner and the trial court stated that they had considered the relevant factors, and the record supports the decision. We accordingly find no abuse of discretion, and affirm

the decision of the trial court.

Affirmed.