ELDER, Judge,
concurring, in part, and dissenting, in part.
I concur in the majority’s affirmance of the trial court’s ruling declining to grant wife sole legal custody of the parties’ children. I also concur in its decision to deny father’s request for an award of attorney’s fees and costs on appeal. However, I respectfully dissent from the majority’s affirmance of the trial court’s ruling on mother’s request for joint legal custody. Because I believe the trial court applied an incorrect legal standard in denying mother’s request for joint legal custody, I would remand to the trial court for further proceedings on that issue.
In resolving disputes between parents over the custody and visitation of minor children, “the court shall give primary consideration to the best interests of the child,” Code § 20-124.2, considering the various factors outlined in Code § 20-124.3. In fashioning a custody arrangement that meets this “best interests” standard, a court may award joint custody or *541 sole custody. See id. Sole custody “means that one person retains responsibility for the care and control of [the children] and has primary authority to make decisions concerning the [children].” Code § 20-124.1. Joint custody has several meanings. The court may award
(i) joint legal custody where both parents retain joint responsibility for the care and control of the [children] and joint authority to make decisions concerning the [children] even though the [children’s] primary residence may be with only one parent, (ii) joint physical custody where both parents share physical and custodial care of the [children] or (in) any combination of joint legal and joint physical custody which the court deems to be in the best interest of the [children].
Id. (emphasis added). The plain meaning of this statute permits a court to apportion between the parents the ability to make certain decisions regarding the children’s upbringing in order to effectuate the children’s best interests. See Vazquez v. Vazquez, 443 So.2d 313, 314 (Fla.Ct.App.1983) (upholding court’s order permitting father to choose children’s school based on state’s “Shared Parental Responsibility Act,” which expressed preference for shared decision-making for divorced parents in upbringing of children but provided that court “may grant to one party the ultimate responsibility over specific aspects of the child’s welfare or may divide those aspects between the parties based on the best interests of the child”).
This best interests standard applies both to an initial determination regarding custody and to any subsequent requests for modification of custody. See Keel v. Keel, 225 Va. 606, 611, 303 S.E.2d 917, 920-21 (1983).
*542 Eichelberger v. Eichelberger, 2 Va.App. 409, 412, 345 S.E.2d 10, 12 (1986) (citation omitted). Although the best interests of the children remains the court’s primary consideration, once a custody order is in effect, a party seeking a change in custody must prove both that a change in circumstances has occurred since the last custody award and that a change in custody is in the best interests of the children. See Keel, 225 Va. at 611, 303 S.E.2d at 920-21. Virginia has specifically rejected the “narrow view that once custody is decided it should stay decided absent ‘gross changes that threaten harm’ to the children.” Id. Compare Williams v. Williams, 256 Va. 19, 20-22, 501 S.E.2d 417, 417-18 (1998) (plurality opinion) (in dispute between parents in “intact” family and alleged “person with a legitimate interest” (grandparents) seeking visitation with child under Code § 20-124.2, holding that parents’ fundamental constitutional right to raise child is acknowledged in statute’s requirement that a court “give due regard to the primacy of the parent-child relationship” and that law requires court to make threshold finding of “ ‘actual harm to the child’s health or welfare without such visitation’” before reaching “best interests” standard), and id. at 28-29, 30-33, 501 S.E.2d at 421-22, 423-24 (Hassell and Kinser, J.J., dissenting in part and concurring in judgment) (agreeing that parents’ constitutional right to raise child requires finding of harm before state may interfere with that right but asserting that Code § 20-124.2 is unconstitutional because it contains no such requirement), with Dotson v. Hylton, 29 Va.App. 635, 638-40, 513 S.E.2d 901, 903 (1999) (holding that, in dispute between divorced parents over visitation for child’s paternal grandmother, Williams standard of harm to child does not govern and court applies statutory standard for visitation by “person with a legitimate interest,” which requires only clear and convincing proof that visitation serves best interests of child).
*541 Once a court has ruled on matters relating to the custody and care of minor children ..., the court retains jurisdiction throughout the minority status of the child involved. The court, in the exercise of its sound discretion, may alter or change custody ... when subsequent events render such action appropriate for the child’s welfare.
*542 Here, in ruling on the issue of education, the trial court made conflicting observations. It observed that it had to consider whether a particular type of education was in the children’s “best interest.” However, it also relied heavily on language in Martin v. Stephen, 937 P.2d 92 (Okla.1997), to *543 hold that, absent “ ‘most unusual conditions’ ” or “ ‘compelling circumstances,’ ” it “ha[d] no business ... interfering” with the legal custodian’s “right to decide where the children are educated.”
As discussed above, Virginia’s child custody statutes specifically provide that the court must consider the best interests of the children. See Code §§ 20-124.2, 20-124.3. The mere fact that Code § 22.1-254.1 provides generally that home-schooling of children by their parents, under certain circumstances, “is an acceptable alternative form of education” does not alter the court’s more specific statutory duty under Code § 20-124.2 to make child custody decisions based on the best interests of the children. Parents have a fundamental constitutional right to make decisions regarding child-rearing, and the state may not interfere with this right absent the compelling state interest of protecting the child’s health or welfare. See, e.g., Williams, 256 Va. at 21, 501 S.E.2d at 418 (plurality opinion); id. at 28-29, 501 S.E.2d at 421-22 (Hassell and Kinser, J.J., dissenting in part and concurring in result). However, where the dispute over child-rearing is between two parents involved in a custody dispute, it may be inherently impossible to preserve that fundamental right with respect to each parent simultaneously. Under those circumstances, therefore, the statute provides that the best interests standard controls. See Dotson, 29 Va.App. at 638-40, 513 S.E.2d at 903; see also Clark v. Reiss, 38 Ark.App. 150, 831 S.W.2d 622, 624-25 (1992) (upholding application of best interests test to prevent custodian from home-schooling children in light of deficiencies in specific program and impact of home-schooling on non-custodial parent’s visitation time and ability to participate in their schooling); Bowman v. Bowman, 686 N.E.2d 921, 926-27 (Ind.Ct.App.1997) (upholding application of best interests test to the “particular circumstances” of that case as ground for removing children from custody of parent who wished to home-school them); King v. King, 225 A.D.2d 819, 638 N.Y.S.2d 980, 981 (NY.App.Div.1996) (upholding application of best interests test to award custody to children’s father where “manner in which [mother] structured and conducted the home instruction *544 ... was not ideal”); Elrod v. Elrod, 125 N.C.App. 407, 481 S.E.2d 108, 111 (1997) (acknowledging best interests standard but noting that father earlier had agreed to entry of order permitting home-schooling and had shown no change of circumstances permitting court to revisit home-schooling issue); In re Riess, 260 Ill.App.3d 210, 198 Ill.Dec. 305, 632 N.E.2d 635, 640-42 (1994) (citing statutory “negative” best interests test permitting custodian to make certain decisions unless they would “clearly be contrary to the best interests of the child” and remanding for additional evidence). But see Martin v. Stephen, 937 P.2d 92, 98-100 (Okla.1997) (Simms, J., concurring) (noting that custodial parent’s “rights and obligations of custody are extensive and operate against third parties, including the noncustodial parent” such that custodial parent’s decision to home-school children is not grounds for change of custody unless it “directly and adversely affected [children] in [a] material way or posed a serious threat to their health, safety or welfare”); Rust v. Rust, 864 S.W.2d 52, 56-57 (Tenn.Ct.App.1993) (reciting best interests standard for custody decisions but holding that once initial custody decision has been made, custodial parent retains same fundamental autonomy over childrearing decisions that married parents would have absent evidence that parent is no longer fit and, therefore, that custodial parent may home-school child unless homeschooling “poses a substantial danger to the child’s health or safety or places a substantial social burden on him”). See generally J. Bart McMahon, An Examination of the Noncustodial Parent’s Right to Influence and Direct the Child’s Education: What Happens When the Custodial Parent Wants to Home Educate the Child, 33 U. Louisville J.Fam.L. 723 (1995).
Because Code §§ 20-124.1 and 20-124.2 permit the court to fashion any combination of joint legal custody which is in the best interests of the children, the trial court had authority under Virginia’s statutory scheme to bifurcate the issues over which mother and father have decision-making authority in this case, giving mother the authority to make decisions regarding the children’s education while reserving to father *545 the ability to make all other decisions associated with legal custody.
Therefore, I would hold that the trial court erred in concluding it could not revisit the child custody issue absent unusual or compelling circumstances and would remand to the trial court for further proceedings in keeping with the best interests standard, including the option of joint legal custody tailored to allow mother to choose where to educate the children while reserving to father all other decisions associated with legal custody.